CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 21 2008

JOHN F. CORCORAN, CLERK
BY: /s/
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ANTHONY L. RUSH,<br>    Plaintiff, | Civil Action No. 7:08CV00053 |
| v. | **MEMORANDUM OPINION** |
| NURSE VANDEVANDER, et al.,<br>    Defendants. | By: Hon. James C. Turk<br>Senior United States District Judge |

Plaintiff, Anthony L. Rush, a Virginia inmate proceeding pro se, brings a civil rights complaint pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Rush alleges several claims arising from his incarceration at Cold Springs Work Center ("Cold Springs"). Rush seeks compensatory damages, declaratory relief, and injunctive relief. Upon review of the record, the court concludes that Rush has not stated a claim upon which relief can be granted. Therefore, the court will dismiss the complaint without prejudice, pursuant to 28 U.S.C. § 1915A(b)(1).[1]

## I. Analysis

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Because Rush sets forth five distinct claims, each with its own history of his resort to the prison administrative remedy system, and because of the temporal and factual distinctions between the claims, the court will discuss separately the facts of each claim and the attendant legal analysis

---

[1] Section 1915A(b)(1) provides that the court shall dismiss a complaint as soon as practicable if the court determines that it is frivolous, malicious, or fails to state a claim upon which relief may be granted.

of each claim.

## II. Back Injury Claim

Rush first complains that in July of 2007 he was "sent to work under a lot of sadative [sic] medication." (Compl. at 5.) Rush complains that he subsequently slipped and fell during his work detail, injuring his back, and surmises that his medication caused him to fall. Rush provides the court with a list of medications that he was allegedly prescribed at the time of his injury: Naproxen[2]; chlorpheniramine[3]; cyclobenzaprine[4]; cephalexin[5]; clindamycin[6]; Maxide[7]; and Vasotec.[8] Rush contends that he had previously explained to Nurse Vandevander that a side-effect of his current medication was drowsiness, but alleges that she refused to change his medication. Rush alleges that "Nurse Vandevander did every[thing] she could to make me as drowsey [sic] as she could and sent

---

[2] Naproxen is a non-steroidal anti-inflammatory drug commonly used for the reduction of moderate to severe pain, fever, inflammation and stiffness caused by conditions such as arthritis or injury. http://en.wikipedia.org/wiki/Naproxen.

[3] Chlorpheniramine, an antihistamine, relieves red, itchy, watery eyes; sneezing; and runny nose caused by allergies, hay fever, and the common cold. http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a682543.html.

[4] Cyclobenzaprine, the generic brand of Flexeril, is a muscle relaxant. Specifically, cyclobenzaprine relieves muscle spasm when the spasm is due to local problems (that is, problems originating in the muscle itself and not in the nerves controlling the muscles). Cyclobenzaprine has no effect on muscle function. http://www.medicinenet.com/cyclobenzaprine/article.htm.

[5] Cephalexin is a cephalosporin antibiotic used to treat certain infections caused by bacteria such as pneumonia and bone, ear, skin, and urinary tract infections. http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a682733.html.

[6] Clindamycin, an antibiotic, is used to treat infections of the respiratory tract, skin, pelvis, vagina, and abdomen. http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a682399.html.

[7] Maxzide (triamterene-HCTZ) is commonly prescribed to treat fluid retention (edema) and high blood pressure (hypertension). http://blood-pressure.emedtv.com/maxzide/maxide.html.

[8] Vasotec, generic name enalapril, is a drug that is used for treating high blood pressure. http://www.medicinenet.com/enalapril/article.html.

[sic] me to work." (Claim Two Compl. at 5.)[9]

As a threshold matter, the Cold Springs Medical Department is not a state actor subject to suit under § 1983. See Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989). Moreover, Rush fails to properly identify the Cold Springs physician that allegedly denied him medical care or allege specific facts against the physician. Accordingly, only Nurse Vandevander and Major Shupe remain as defendants concerning Rush's injured back claims. However, even if Rush were given the opportunity to amend his complaint to name other defendants or to specify his claim concerning the physician, his claim would still be dismissed, as the court is satisfied that he could prove no set of facts consistent with his current allegations that state any claim of constitutional significance.

In order to state a cognizable claim for denial of medical care under the Eighth Amendment, a plaintiff must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish deliberate indifference, a plaintiff must present facts to evince that the defendants had actual knowledge of and disregard for an objectively serious medical need. Farmer v. Brennan, 511 U.S. 825 (1994); see also Rish v. Johnson, 131 F.2d 1092, 1096 (4th Cir. 1997). A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. See Farmer, 511 U.S. at 832-35; Sosebee v. Murphy, 797 F.2d 179, 182-83 (4th Cir. 1986); Loe v. Armistead, 582 F.2d 1291, 1296-97 (4th Cir. 1978).

---

[9] Rush does not appear to complain about his medical treatment subsequent to his back injury. Rush admits that he was "given medication for [his] back injury," specifically Robaxin, a muscle relaxant, subsequent to his injury and his complaints of back pain. (Compl. at 4.) Rush's medical records, which Rush attaches as exhibits to his complaint, also reveal that his back was examined soon after his injury and that abrasions, swelling, bruising, or bulges were not noted. Rush further admits that he is "getting treated" for his back injury at his current place of confinement, Nottoway Correctional Center. (Compl. at 5.) Rush informs the court that he is currently able to work and exercise.

3

Case 7:08-cv-00053-JCT-mfu    Document 5    Filed 02/21/08    Page 3 of 11    Pageid#: 92

Questions of medical judgment are not subject to judicial review. <u>Russell v. Sheffer</u>, 528 F.2d 318, 319 (4th Cir. 1975). Claims regarding a disagreement between an inmate and medical personnel over diagnosis or course of treatment and allegations of malpractice or negligence in treatment do not state cognizable constitutional claims under the Eighth Amendment. <u>Wright v. Collins</u>, 766 F.2d 841, 849 (4th Cir. 1985); <u>Estelle</u>, 429 U.S. at 105-06. Additionally, an inmate is not entitled to unqualified access to health care; the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable" to the inmate. <u>Bowring v. Godwin</u>, 551 F.2d 44, 47-48 (4th Cir. 1977).

To bring such a claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with a prison physician's treatment, or tacitly authorized or were indifferent to the prison physician's misconduct. <u>Miltier v. Beorn</u>, 896 F.2d 848, 854 (4th Cir. 1990). Furthermore, a defendant who occupies a supervisory position may not be held liable merely under a theory of <u>respondeat superior</u> in a § 1983 action. See <u>Monell v. Dep't of Soc. Serv.</u>, 436 U.S. 658, 690-92 (1978); <u>Ross v. Reed</u>, 719 F.2d 689, 698 (4th Cir. 1983) (finding that <u>respondeat superior</u> liability has no place in § 1983 jurisprudence).

Applying these principles, and taking Rush's allegations in the light most favorable to him, the court concludes that they are insufficient to state possible claims under § 1983. Rush's medical records reveal that a prior unspecified wrist injury necessitated the pain medication and muscle relaxant and Rush does not contend that he did not suffer from allergies or high blood pressure. As long as there is a legitimate medical reason for a certain course of treatment, an inmate's disagreement with the treatment is not sufficient to state a claim. See <u>Taylor v. Barnett</u>, 105 F. Supp.

4

2d 483, 488 (E.D. Va. 2000) (citing Perkins v. Kansas Dept. of Corrections, 165 F.3d 803, 811 (10th Cir. 1999)). Although Rush may be dissatisfied with the prescribed treatment plan, these complaints amount to nothing more than disagreements between medical staff and an inmate as to proper diagnostic methods and a course of treatment; such disagreements are not actionable under the Eighth Amendment.

Moreover, the record is bereft of any causal link between the administration of the medication and any adverse effect on Rush. Rush's medical records reveal that he reported that he fell down a hill while at work when the brush that he was up-rooting gave way. Thus, it appears that the injury was caused by an unforeseeable accident and Rush fails to provide the court with any explanation how his medication, even if drowsiness was a side-effect, caused the accident to occur. Even if the side-effects of the medication did contribute to Rush's injury, he alleges, at most, claims of negligent treatment, which are not actionable under § 1983.[10] Farmer, 511 U.S. at 838; Estelle, 429 U.S. at 104; Jackson v. Alameda County Sheriff's Dept., No. C 02-074, 2002 WL 356647 at *2 (N.D. Cal. Mar. 1, 2002) (finding no deliberate indifference and, at most, negligence where inmate was over-medicated and fell out of his top bunk bed and injured himself).[11] Therefore, Rush's claims against Nurse Vandevander fail and must be dismissed.

Finally, Rush fails to allege and the record does not support that Major Shupe was personally involved with the alleged over-medication and subsequent back injury. Rush does not allege that

---

[10] To the extent Rush believes he has an actionable claim against the defendants under state law, the court declines to exercise supplemental jurisdiction over any such state law claim, pursuant to 28 U.S.C. § 1367(c)(3).

[11] Rush further complains that Nurse Vandevander increased his blood pressure medication at an unspecified time for no reason and that this constitutes malpractice. Rush fails to allege any adverse result from the increase in medication and, as this court has already noted, allegations of malpractice do not state cognizable constitutional claims under the Eighth Amendment. Estelle, 429 U.S. at 105-06.

5

Shupe intentionally interfered with his treatment nor does he contend that Shupe was indifferent or authorized any alleged misconduct by the medical staff. Rush merely contends that Major Shupe "[i]s the head supervisor at Cold Springs and he could be held accountable." (Compl. at 5.) Supervisory officials such as Major Shupe are entitled to rely on the medical judgment made by prison medical staff. See Miltier, 896 F.2d at 854; Monell, 436 U.S. at 690-92. Accordingly, Rush's claim against Major Shupe fails and must be dismissed.[12]

### III. Racial Slur Claim

Rush next complains that his constitutional rights were violated by Officer Patterson. Rush explains that an altercation between himself and Patterson occurred during an August 22, 2007 work detail. Rush alleges that Patterson "was talking like he was going to write [him] up" so Rush "curse[d]" at Patterson in response. (Claim Two, Ex. #5782.) Patterson subsequently arranged for Rush to be transported back to Cold Springs. Rush was placed in segregation as punishment for the incident and, during that time, he alleges that Patterson approached his cell and forced him to get up out of bed for the evening count, laughed at him, and called him a derogatory racial slur.

While Patterson's conduct in calling Rush a racial slur, if true, was arguably inappropriate, the court notes that verbal abuse and harassment, without more, do not state a constitutional claim. See Cullins v. Cundy, 603 F.2d 825 (10th Cir. 1979), cited favorably in, Moody v. Grove, 885 F.2d 865 (4th Cir. 1989) (table) (unpublished); Morrison v. Martin, 755 F.Supp. 683, 687 (E.D.N.C. 1990) (As a general rule, verbal abuse of inmates by guards, without more, does not state a

---

[12] Furthermore, it is clear that Rush did not exhaust all available grievance procedures as to these medical claims. The Prison Litigation Reform Act requires that inmates exhaust all available administrative remedies before filing an action challenging prison conditions. 42 U.S.C. § 1997e(a). Rush admits that he did not exhaust these issues as "proff [sic] of this insident [sic] is right in the medical file and I am getting treated for the insident [sic]." (Compl. at 3.) He further notes that, "[a]lthough their [sic] is no grievance included with this claim, all personnell [sic] was informed of my back injury." (Compl. at 5.)

6

constitutional claim). The constitution does not "protect against all intrusions on one's peace of mind." Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991). Verbal harassment or idle threats to an inmate, even to an extent that causes an inmate fear or emotional anxiety, do not constitute an invasion of any identified liberty interest. Emmons v. McLaughlin, 874 F.2d 351, 354 (6th Cir. 1989) (verbal threats causing fear for plaintiff's life not an infringement of a constitutional right); Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) (calling an inmate an obscene name did not violate constitutional rights); Lamar v. Steele, 698 F.2d 1286 (5th Cir. 1983) ("Threats alone are not enough. A section 1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation."); Keyes v. City of Albany, 594 F. Supp. 1147 (N.D.N.Y. 1984) ("[T]he use of vile and abusive language [including racial epithets], no matter how abhorrent or reprehensible, cannot form the basis for a § 1983 claim."). The law is clear that mere "threatening language and gestures of [a] penal officer do not, even if true, constitute constitutional violations." Fisher v. Woodson, 373 F. Supp. 970, 973 (E.D. Va. 1973). The most Rush asserts is that he was assailed with a racial epithet and laughter and alleges no facts that would raise his claim to the level of a constitutional violation.[13] Accordingly, this claim must be dismissed.

---

[13] The court notes that Rush does appear to complain in a copy of a letter submitted with his complaint that he was treated differently in this situation from another prisoner. Specifically, he explains that when an unidentified Caucasian prisoner cursed to an officer during another unspecified work detail, that inmate was allowed to continue to work. Rush contends that, subsequent to his altercation with Patterson during the August 22, 2007 work detail, he was handcuffed and an unidentified officer "pulled a gun" when the officers loaded Rush into a vehicle to return him to Cold Springs. (Claim Two, Ex. #5782.) The court first notes that Rush fails to demonstrate exhaustion of these claims. Regardless, the mere act of drawing a gun does not raise this alleged harassment to the level of a constitutional violation. Rush does not allege that the officer pointed the gun at him or threatened him, nor does Rush contend that he was not acting in a way that necessitated such caution. See Burton v. Livingston, 791 F.2d 97, 100-101 (8th Cir. 1986) (drawing a gun and terrorizing prisoner with threats of death while using racially offensive language presents cognizable claim). Moreover, this court cannot second guess a prison official's security decision absent a showing of a constitutional violation. Bell v. Wolfish 441 U.S. 520, 546 (1979); Jones v. N.C. Prisoners' Labor Union, Inc., 433 U.S. 119, 126 (1977). Finally, Rush fails to provide sufficient facts to support his claim that his removal from the work detail was racially motivated rather than a result of his altercation with Patterson. Prisoners do not have a constitutional right to
(continued...)

7

## IV. Personal Property Claim

Rush further complains that, subsequent to the aforementioned altercation between himself and Patterson, Officer Elkins and Officer Terrell refused to provide Rush with his personal Bible, legal materials, and writing materials, while he was in segregation. Rush further alleges that Officer MacManay was at first helpful in attempting to retrieve these items but then lied about the incident to his supervisor. Rush appears to concede that he eventually received writing materials but complains that he never received his legal notes or Bible.

The Supreme Court has made it clear that § 1983 is not intended to be used as a substitute for state tort law remedies. Baker v. McCollan, 443 U.S. 137, 146 (1979); Wallace v. Chrysler Credit Corp., 743 F. Supp. 1228, 1236 (W.D. Va. 1990). The intentional or negligent deprivation of personal property by a police officer or prison employee acting outside the scope of official policy or custom does not rise to the level of a constitutional violation, so long as the state provides an adequate post-deprivation remedy. See Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986). State law remedies, including the Virginia Tort Claims Act, are available to Rush as a means to seek compensation for his alleged property loss. See Wadhams v. Procunier, 772 F.2d 75 (4th Cir. 1985) (holding that the Virginia Tort Claims Act and Virginia's tort laws provide an adequate remedy); Ballance v. Young, 130 F. Supp. 2d 762, 767 (W.D. Va. 2000). Accordingly, inasmuch as Rush has adequate state remedies, the court finds that he has failed to state a cognizable constitutional claim

---

[13](...continued)
work assignments, Gaston v. Taylor, 946 F.2d 340, 344 (4th Cir. 1991) (en banc), and the conclusory nature of Rush's allegations are insufficient to state any claim of racial discrimination.

regarding his legal notes and Bible.

### V. Wrist X-ray Claim

Rush next contends that, subsequent to Patterson's alleged verbal abuse, Rush was scheduled for an x-ray of his wrist at an off-site medical facility. Rush does not clarify what injury he received to his wrist necessitating an x-ray. Rush complains that Patterson was one of the guards assigned to accompany him to the x-ray and that Rush feared for his safety. Rush alleges that Major Shupe gave him the option of medical care for his wrist accompanied by Patterson or no medical care at all.

Rush's medical records reveal that he was scheduled for a wrist x-ray on September 10, 2007; however, Rush refused the treatment and signed a refusal of treatment form. An October 17, 2007 grievance response indicates:

> You were scheduled to have X-Ray's [sic] taken of your wrist at Augusta Medical Center on August 10, 2007. Officers A. Patterson and S. Hite were scheduled to transport you for this appointment. You refused the medical transportation based upon a complaint that you had filed against Officer Patterson claiming that you were afraid to be under his supervision.
>
> I called you to my office to explain to you that your allegations against Officer Patterson had been investigated and deemed unfounded. I also explained to you that there would be another Officer present at all times during this transportation; however, you still chose to refuse this medical attention. Since it was your decision to refuse this transportation, and there was no justifiable reason why Officer Patterson could not be assigned to this task, this grievance is judged to be unfounded and the medical co-pay will not be rescinded.

(Claim Two, grievance log # 042-00464.)

The court finds that Rush fails to state a claim of deliberate indifference to a serious medical need. The record contains no evidence that defendants were aware that Rush's transportation with Patterson would create a substantial risk of harm. Rush provides no facts to support his rationale that Patterson was a threat to his safety. As the court has already noted, verbal abuse, even in the

9

form of a racial slur, is insufficient to state a constitutional claim. Moreover, Rush does not allege that Patterson ever threatened him with physical injury or that Patterson ever attempted to harm him. In any event, defendants' actions did not deprive Rush medical care as Rush refused to be transported for the treatment. Finally, the court notes that the Supreme Court has explicitly rejected a claim that the failure to order X-rays constitutes deliberate indifference to a serious medical need. See Armes v. Noble County Sheriff Dept., 215 F. Supp. 2d 1008, 1018 (N.D. Ind. 2002) (citing Estelle, 429 U.S. at 107 (the failure to order an X-ray is at most medical malpractice not cruel and unusual punishment implicating deliberate indifference to a serious medical need)). Thus, any failure of defendants to provide Rush with another escorting officer or to reschedule an X-ray does not rise to the level of a constitutional violation and must be dismissed.[14]

## VI. Transfer Claim

Rush also appears to make a complaint concerning his transfer to Nottoway Correctional Center. It is well-settled that inmates do not have a constitutionally protected liberty interest in being housed at any particular institution. Meachum v. Fano, 427 U.S. 215, 224 (1976) (holding that a valid conviction "empower[s] the State to confine [an inmate] in any of its prisons"). Further, Virginia's prison housing assignment regulations do not create a liberty interest in a specific prison housing assignment and prison officials have broad discretion to determine the facility where an

---

[14] Rush further alleges that he is not receiving proper medical care for his wrist and that he has not been assigned to a work release program at Nottoway Correctional Center because the Cold Springs staff "put a bad word on [his] name." (Claim Two Compl. at 5.) Nottoway Correctional Center is located in Burkeville, Virginia, in Nottoway County. Nottoway County is located in the Eastern District of Virginia; thus, this court does not have jurisdiction over these claims as the potential defendants are located in Nottoway County and all of the events pertaining to these claims presumably occurred at Nottoway Correctional Center. See 28 U.S.C. § 139. Moreover, Rush fails to demonstrate exhaustion of administrative remedies as to these claims or provide the court with any facts to support his conclusory contentions that the Cold Springs staff are participating in the alleged denial of medical care or work release program participation.

10

inmate is housed. Id.; see also Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991) (noting that prison officials should be granted broad discretion in managing prisons safely and effectively). Therefore, Rush's Due Process rights are not implicated by his routine housing assignment unless the conditions of his confinement diverge so substantially from expected prison conditions as to create an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Rush does not contend that the conditions at Nottoway Correctional Center impose an atypical and significant hardship on him in relation to the ordinary incidents of his life in prison. Thus, a liberty interest is not implicated and this claim must be dismissed.

## VII. Conclusion

For the stated reasons, Rush's suit will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). Plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within thirty days of the date of entry of this Memorandum Opinion, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk of Court is directed to send a copy of this Memorandum Opinion and accompanying Order to plaintiff.

ENTER: This _____ day of February, 2008.

_____
Senior United States District Judge

11